IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| BINH HUU DO,<br><br>                Appellant,<br>        v.<br><br>PLATINUM MANAGEMENT, INC.,<br><br>                Appellee,<br><br>        v.<br><br>PORTLAND INJURY INSTITUTE LLC,<br><br>                Debtor. | Case Nos.: 3:23-cv-00520-AN (lead)<br>                        3:23-cv-00521-AN<br>                        (consolidated)<br><br><br>OPINION AND ORDER |

This consolidated appeal arises from a judgment and an order entered by the United States

Bankruptcy Court for the District of Oregon in Case Nos. 21-03045-dwh (the "Adversary Case") and 21-

30158-dwh7 (the "Bankruptcy Case").  For the following reasons, the bankruptcy court's decision in Case

No. 21-03045-dwh and the bankruptcy court's decision in Case No. 21-30158-dwh7 are AFFIRMED.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 158(a)(1), district courts retain jurisdiction to hear appeals from "final

judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the

bankruptcy judges under section 157 of this title."  Generally, when reviewing a bankruptcy court's decision,

the district court reviews findings of fact "under the clearly erroneous standard, and conclusions of law, *de*

*novo*." *In re Schwarzkopf*, 626 F.3d 1032, 1035 (9th Cir. 2010) (quoting *Christensen v. Tucson Ests., Inc.*,

912 F.2d 1162, 1166 (9th Cir. 1990)).

A bankruptcy court's decision to deny a motion to amend a judgment or order is reviewed

for abuse of discretion.  *In re Burnett*, 306 B.R. 313, 317 (9th Cir. 2004).  "A bankruptcy court abuses its

discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of

material fact." *Id.*  For factual inferences based on the evidence, "[a] court's factual determination is clearly

erroneous if it is illogical, implausible, or without support in the record."  *In re Retz*, 606 F.3d 1189, 1196

(9th Cir. 2010) (citing *United States v. Hinkson*, 585 F.3d 1247, 1261-62, n.2 (9th Cir. 2009) (en banc) and

*Anderson v. City of Bessemer City*, 470 U.S. 564, 577 (1985)).  "Where there are two permissible views of

the evidence, the factfinder's choice between them cannot be clearly erroneous."  *Anderson*, 470 U.S. at

574 (citations omitted).

## BACKGROUND

The Court provides only the factual and procedural background relevant to the issues

before the Court.   In 2019, appellant Binh Huu Do ("Do" or "appellant") and appellee, Platinum

Management, Inc. ("Platinum"), wholly owned by Volodymyr Golovan ("Golovan") (collectively,

"appellees"), jointly owned a chiropractic clinic named Portland Injury Institute, LLC ("PII").  Appellant's

Opening Br., ECF [12], Excerpt of the R. ("ER") 88-89.  Do, a chiropractic doctor, was responsible for

patient care while Golovan agreed to manage the business operations of PII and through Platinum.  ER 102-

05.  The relationship between the parties soured, leading Do to file a bankruptcy petition on behalf of PII,

at which point both parties filed claims to the entity's assets.  *Id.* at 47-52.  Appellant claimed he was owed

money for services rendered, and appellees asserted claims for amounts due under the PII operating

agreement.  *Id.*

This consolidated appeal arises from two separate court proceedings.  On January 22, 2021,

Do filed for Chapter 7 bankruptcy, initiating the Bankruptcy Case.  *Id.* at 104.  Do filed an unsecured proof

of claim in the amount of $46,014.00, to which appellees objected.  *Id.* at 49-53.  Golovan and Platinum

filed a joint unsecured proof of claim in the amount of $240,407.00, to which Do objected.  *Id.* at 46-48.

On May 28, 2021, the bankruptcy court granted Platinum the authority to purchase all of PII's assets.  *Id.* at

43-45.  Platinum became the debtor in possession with avoidance powers of a trustee under 11 U.S.C. §

1107.  *Id.* at 43-45.  On October 1, 2021, Platinum filed an adversary proceeding complaint against Do for

avoidance of fraudulent transfers, initiating the Adversary Case.  *Id.* at 86-91.  The bankruptcy court tried

the claim objections in the Bankruptcy Case and the fraudulent conveyance claims in the Adversary Case

together.  *Id.* at 338.

Do unsuccessfully asserted a fraud counterclaim based on forgery, in which he claimed that Golovan changed the terms of PII's operating agreement after the parties signed it. *Id.* at 98-99. To support his defense, Do sought to introduce evidence of Golovan's fifteen-year-old criminal convictions (the "conviction evidence" or "convictions") that were vacated as unconstitutionally obtained in a post-conviction challenge. *Id.* at 115. The bankruptcy court denied that request.

Appellant appeals the judgment entered in the Adversary Case, awarding appellees $100,887.51 as recovery for Do's fraudulent transfers, and the Order on Claim Objections entered in the Bankruptcy Case, overruling Do's objections and sustaining Golovan and Platinum's objections.

## DISCUSSION

Appellant raises three issues on appeal. First, appellant argues that the bankruptcy court erred in holding that a criminal conviction vacated during post-conviction relief proceedings is not a conviction for the purposes of Federal Rule of Evidence ("FRE") 609. Appellant's Opening Br. 2. Second, appellant argues that the bankruptcy court abused its discretion by not allowing Do to introduce evidence of Golovan's prior criminal convictions for forgery, identity theft, and attempted aggravated theft under FRE 609(b)(1). *Id.* at 2-3. Third, appellant argues that the bankruptcy court committed clear error in finding that the operating agreement is genuine. *Id.* at 3. The Court addresses each issue in turn.

### A.      Federal Rule of Evidence 609

Appellant urges this Court to reverse the bankruptcy court's decision to exclude the conviction evidence under FRE 609(e). Appellant argues that the convictions could not be inadmissible under FRE 609(e) because they were not reversed on appeal. *Id.* at 21.

FRE 609 governs submissions "attacking a witness's character for truthfulness by evidence of a criminal conviction." Fed. R. Evid. 609(a). Generally, evidence of a conviction for a crime punishable in the convicting jurisdiction by death or imprisonment for more than one year must be admitted in a civil case, subject to FRE 403. Fed. R. Evid. 609(a)(1)(A). Additionally, for any crime which the court can "readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement," the evidence must be admitted regardless of the applicable

punishment. Fed. R. Evid. 609(a)(2). Such evidence, however, must be timely. If "more than 10 years have passed since the witness's conviction or release from confinement for it," evidence of the prior conviction is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b)(1)-(2). Moreover, the Advisory Committee Notes to the FRE 609(b) state: "It is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." Fed. R. Evid. 609 advisory committee's note to 1974 amendment.

FRE 609(e), however, allows convictions pending on appeal to be used for impeachment. Courts, including the bankruptcy court in the present case, interpret FRE 609(e) to apply only "until the judgment of the lower court is reversed." *Copart, Inc. v. Sparta Consulting, Inc.*, No. 2:14-CV-00046-KJM-CKD, 2018 WL 1871414, at *22 (E.D. Cal. April 19, 2018) (quoting *United States v. Allen*, 457 F.2d 1361, 1363 (9th Cir. 1972)). Thus, under FRE 609(e), "once a conviction has been reversed, it cannot be used to impeach the accused." *Id.* (quoting *United States v. Russell*, 221 F.3d 615, 620 (4th Cir. 2000)).

The bankruptcy court found difficultly in admitting convictions that were set aside as unconstitutional, when, pursuant to FRE 609(e), a conviction reversed for any reason, including unconstitutionality, must be excluded. Appellant's argument that the convictions must go through the appellate process to be excluded pursuant to FRE 609(e) is without merit. The fact that the State conceded the unconstitutionality of the convictions at the trial court level rather than litigate the issue on appeal only demonstrates the clarity of the constitutional violation that occurred, and, analogous to a successfully appealed conviction, creates the same outcome: a reversed conviction. Thus, the Court agrees with the bankruptcy court that the conviction evidence either does not qualify as "convictions" admissible under FRE 609 or should be excluded under FRE 609(e).

Even were such evidence improperly excluded, appellant has not established that the exclusion affected the outcome in this case. Broad discretion is afforded to a bankruptcy court's evidentiary rulings. *In re Mbunda*, 484 B.R. 344, 352 (B.A.P. 9th Cir. 2012). "To reverse such a ruling, [the court]

must find that the [bankruptcy] court abused its discretion and that the error was prejudicial. A reviewing court should find prejudice only if it concludes that, more probably than not, the [bankruptcy] court's error tainted the verdict." *Id.*

Appellant argues that the excluded evidence affected the outcome because the bankruptcy court found the operating agreement to be genuine "based, in part, on the credibility of Golovan's testimony," and the excluded evidence "would have been strong impeachment evidence of Golovan's credibility." Appellant's Opening Br. 22. To the contrary, the disputed portion of the bankruptcy court's ruling minimally relied on Golovan's testimony. Instead, the majority of the court's opinion focused on rejecting the testimony from appellant and appellant's experts. *See* ER 59-62.

The bankruptcy court inferred from "several things Do said or did, or failed to do," that he likely did not read the agreement carefully before signing it. *Id.* at 63. First, the bankruptcy court pointed to Do's employment search via Craigslist, which did not suggest a high level of sophistication in business or professional matters. *Id.* Second, the bankruptcy court pointed to consistent testimony by both Golovan and Do that Do relied on Golovan to handle all aspects of PII's business other than the actual provision of chiropractic services to its patients. *Id.* at 59-60. Third, the bankruptcy court highlighted Do's failure to keep a copy of the agreement after signing it, which suggested a lack of sophistication and care in business matters. *Id.* at 60. The court expressed "doubt that a typical health-care professional who is the sole, or even majority owner, of a health-care practice with staff would fail to carefully read an LLC operating agreement," however, it could "envision [ ] a professional with Do's approach to business matters doing so." *Id.*

The bankruptcy court, moreover, noted that Do's testimony about the terms of the agreement that he said he signed would be "unusual for a businessperson in Golovan's position to agree to." *Id.* For example, according to Do, "Golovan was responsible for all aspects of PII's business operation, but Golovan would be entitled only to reimbursement of expenses and the right to share any PII profits equally with Do." *Id.* However, it is unlikely that Golovan would agree to "use his efforts, presumably on a full-time basis, and that Platinum would use capital to make those payments" when doing so would "expose

itself to the risk that PII would not be able to reimburse those expenses, and they would receive no compensation for [Golovan's] efforts or the use of [Platinum's] capital and assumption of risk, other than [Golovan's] right to share any profit." *Id.* The court found it especially unusual for Golovan to accept those terms when his testimony showed him to be "sophisticated and earnest in the ways of advancing his own business interests." *Id.* at 61.

Another reason the bankruptcy court found the operating agreement to be genuine is that external evidence undermined the veracity of parts of Do's testimony about the alleged terms of the agreement. *Id.* Do claimed that Golovan had no ownership interest in PII, but several documents signed by Do or his lawyer showed otherwise. *Id.* Additionally, the bankruptcy court cited reports and testimony from Do's document examiners that indicated Golovan did not modify the agreement after Do signed it. *Id*

Even if the conviction evidence had been admitted, it would not have discredited Do's testimony and the testimony of the document examiners, which are separate and sufficient bases to support the bankruptcy court's conclusion. As such, impeaching Golovan would have not impacted the outcome of the case. Accordingly, the bankruptcy court correctly found the conviction evidence inadmissible under FRE 609, and the decision to exclude the conviction evidence, more probably than not, had no effect on the outcome of the case.

Given that the Court finds that the vacated convictions are not "convictions" admissible under FRE 609, appellant's second issue is moot because FRE 609(b)(1) only applies to *convictions* older than ten years. Thus, the Court need not decide whether the bankruptcy court abused its discretion by, alternatively, excluding the conviction evidence pursuant to FRE 609(b)(1).

**B.      Genuineness of the Operating Agreement**

Appellant contests four factual findings that the bankruptcy court relied on to conclude that the operating agreement was genuine. The Court addresses each contested finding in turn.

First, appellant contests the finding that Do was not sophisticated in business matters and likely did not read the operating agreement closely before signing it. The bankruptcy court based its conclusion on the following facts and inferences: (1) Do conducted his employment search via Craigslist;

(2) consistent testimony by Do and Golovan showed that Do relied on Golovan to handle all aspects of PII's business other than patient care; and (3) Do failed to keep a copy of the operating agreement after signing it. ER 59-60.

Appellant argues that finding employment through Craigslist shows business sophistication because appellant "knew where to look for the position." Appellant's Opening Br. 28. The opposite conclusion is also plausible. Craigslist could be considered an unprofessional forum for a job search, especially considering appellant's profession as a chiropractor. Appellant further argues that his reliance on Golovan to handle PII's business simply shows that he trusted appellees to do the work they were contracted to do. *Id.* It is also plausible, however, that the fact that Golovan was hired to handle *all aspects* of PII's business, other than patient care, shows Do's lack of skill in business. Otherwise, Do would not have needed to outsource business management for PII.

The second factual finding that appellant takes issue with is the bankruptcy court's conclusion that Do's statements about what terms were included in the operating agreement were implausible because the terms were lopsided in Do's favor. Instead, appellant argues that those terms were not disadvantageous to appellees. In his testimony, appellant recalled that Golovan *only* agreed to split profits equally with Do, and that this was fair considering Golovan was not a chiropractor and previously worked for a chiropractic clinic for free. *Id.* at 29. The bankruptcy court, however, found that term to be disadvantageous to appellees, reasoning that Golovan would split profits equally with Do, but would expend more effort and incur more risk. ER 60. It is unlikely that Golovan and Platinum would agree to such terms. In turn, finding that those terms likely did not exist in the operating agreement is logically sound, and at the very least, plausible. The fact that Golovan was not a chiropractor has no bearing on whether he should be compensated for business management and administrative services.

Third, appellant challenges the bankruptcy court's finding that Do's assertion that Golovan had no ownership interest in PII was untrue because several documents signed by Do or his lawyer showed otherwise. Appellant argues that the bankruptcy court ignored evidence that Golovan threatened Do to complete the transaction. Appellant's Opening Br. 29. Appellant cites testimony from Abdirashid Hersi

("Hersi") who testified that he was present at a meeting with Do and Golovan in which the share transfer agreement was discussed. *See* Transmittal of R. for Bankr. Appeal, ECF [3], Attach. 6, at 48:11-22, 52:10-12.  Hersi, who at the time of his testimony worked for Do, testified that Golovan threatened Do. *Id.* at 52:11-21.  However, Hersi's testimony was contradicted by his testimony from a prior deposition where he had stated that he did not recall Golovan making threats or even being at the meeting. *Id.* at 54:19-55:225.  Thus, Hersi's testimony is unreliable, at best.  Even if the bankruptcy court ignored this evidence, it does not diminish the ultimate conclusion that the operating agreement was genuine.  Do's untruthfulness regarding a term in the operating agreement makes it more likely that the operating agreement presented by Golovan was genuine, and therefore not modified.

Fourth, appellant challenges the bankruptcy court's conclusion that "the reports and testimony of the document examiners do not support Do's argument that Golovan modified the agreement." ER 61.  Appellant argues that the court ignored "the heart of the expert witness's conclusions: the Operating Agreement may not be authentic."  Appellant's Opening Br. 33.  Appellant's own expert concluded that:

> "The Operating Agreement in question had one irregularity noted that was related to the line spacing previously discussed.  The inconsistency, by itself, did not permit an objective opinion the agreement was fabricated with deceitful intent or was the result of a simple blending of two work products into a single, legitimate document."

ER 233.  The bankruptcy court plausibly found that line spacing and wording inconsistences were consistent with Golovan's testimony about how he created the document from an Internet template and consistent with the fact that English is Golovan's third language.  Further, Do testified that the document was approximately three pages long. *Id.* at 306.  Do's expert, however, testified that the document had never been stapled, which excluded the possibility that a stapled three-page document had been unstapled before being turned into one of nine pages. *Id.* at 311.  From this evidence, the bankruptcy court was unable to conclude that the agreement was modified after Do signed it.  The bankruptcy court's conclusion is supported by the inconsistent evidence presented by Do and Do's experts.  Do simply did not meet his burden to show that the operating agreement was modified.  Thus, this factual finding is not clearly erroneous.

Separate from the contested factual findings, Do argues that the bankruptcy court

"implicitly believed Golovan more credible than Do to find that the Operating Agreement . . . was genuine." Appellant's Opening Br. 30. Appellant points to several areas of Golovan's testimony that he deems not credible. However, the bankruptcy court's conclusion, as discussed in the prior section, relies very little on Golovan's testimony. As none of the contested factual findings used to support the court's conclusion amount to clear error, Do's arguments about the credibility of Golovan's testimony are immaterial to the relevant analysis before the Court. To be sure, the bankruptcy court found Do's testimony insufficient to show that the operating agreement was not genuine because the terms recounted by Do were unusually disadvantageous to Golovan and Platinum. From Golovan's testimony, the bankruptcy court inferred that he was sophisticated and earnest in advancing his own business interests, and the court concluded that he would likely not have agreed to the terms alleged by Do. This inference is logical even without reviewing the alleged inconsistencies in Golovan's testimony. Golovan, an individual contracted by Do to manage all business aspects of PII, likely has the necessary skills to provide business management and administrative services. It follows that Golovan would have the necessary skills to decipher and decline significantly disadvantageous terms. Thus, Do's argument holds little weight, and does not diminish the bankruptcy court's findings.

For these reasons, the Court finds that the bankruptcy court correctly found that the operating agreement at issue was genuine.

## CONCLUSION

Accordingly, the Court AFFIRMS the bankruptcy court's Order on Claim Objections in Case No. 21-30158-dwh7 and AFFIRMS the bankruptcy court's Judgment in Case No. 21-03045-dwh.

IT IS SO ORDERED.

DATED this 31st day of July, 2024.

_____
Adrienne Nelson
United States District Judge

9